# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **BOBBY D. GREEN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **No. 3:06-0446** |
| ) | **JUDGE ECHOLS** |
| **METROPOLITAN POLICE** ) | |
| **DEPARTMENT, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

The Magistrate Judge issued a Report and Recommendation ("R&R") on October 24, 2008 (Docket Entry No. 299), to which Defendant James Spray filed objections (Docket Entry No. 303). The R&R recommends granting in part and denying in part the Motion for Summary Judgment filed by Defendants Harold Wright and James Spray (Docket Entry No. 262), and granting the Motion to Dismiss And/Or Motion For Judgment On The Pleadings filed by Defendant West Nashville Wrecker & Towing Service (Docket Entry No. 269).

Plaintiff Bobby Green, who is proceeding *pro se* and *in forma pauperis*, did not file any objections to the R&R within the time allotted by the Magistrate Judge. Plaintiff filed responses to the motions for summary judgment and to dismiss, but he did not submit any evidence in opposition to the motion for summary judgment. (Docket Entry Nos. 276 & 292.) Plaintiff's claims against all Defendants other than Wright, Spray and the towing service were dismissed in previous Orders entered by the Court.

On November 10, 2008, Plaintiff filed "Petitioner's One Final PreConference/Trial Motion Objecting to this Court's Vitiating Conduct." (Docket Entry No. 310.) The Court does not construe

1

this filing as objections to the pending R&R. Rather, in this latest filing, Plaintiff appears to state that he lacks the physical, mental and financial ability to respond to the recent Orders of the Magistrate Judge and this Court entered in anticipation of, and final preparation for, the upcoming trial date. Plaintiff characterizes his September 12, 2008 filing (Docket Entry No. 279) entitled "Petitioner's Ex Parte Motion to the Court About Pleading Difficulties in Recent Submittals to Submit" as a notice to the Court about his financial difficulties in meeting court deadlines. He explains that his *ex parte* filing was meant to be a notice to the Court and not a motion, which the Magistrate Judge ordered terminated for failure to serve a copy on the adverse parties. (Docket Entry No. 308, Order.) Plaintiff also charges that his case has been destined to fail from the outset due to expediency and reiterates his prior objections about bias on the part of the Magistrate Judge and denials of his motions for appointment of counsel and change of venue. Plaintiff requests a copy of the administrative directive substituting Magistrate Judge John Bryant for Magistrate Judge Clifton Knowles.

While the Court permitted Plaintiff to proceed in this case *in forma pauperis*, Plaintiff is not relieved from following the Federal Rules of Civil Procedure, the Local Rules, and the Orders of the Court. Just as Plaintiff has done over the course of the last two and one-half years, Plaintiff continues to make filings with the Court, even though he may be having financial difficulties. Plaintiff has not shown how financial stress impacts his ability to respond as ordered. The Court considered all of Plaintiff's filings and ruled upon them during this litigation. On multiple prior occasions, the Court rejected Plaintiff's complaints that Magistrate Judge Bryant is biased, the Court denied Plaintiff's request for appointment of counsel, and the Court denied Plaintiff's motion for a change of venue. (Docket Entry No. 116, 131, & 209, Orders.) These issues will not be revisited.

Magistrate Judge Bryant was assigned to this case pursuant to Administrative Order 138-4, as referenced in Magistrate Judge Knowles' Order entered on August 11, 2006. (Docket Entry No. 38.) The Court will direct the Clerk to provide Plaintiff with a copy of Administrative Order 138-4.

## I. STANDARD OF REVIEW

When no objections are filed to an R&R or to a portion of an R&R, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).

When a party makes timely objections to an R&R, the Court "shall make a *de novo* determination of the matter and may conduct a new hearing, take additional evidence, recall witnesses, recommit the matter to the Magistrate Judge for further proceedings and consideration, conduct conferences with counsel for the affected parties, and receive additional arguments, either oral or written, as the District Judge may desire." L.R.M.P. 9(b)(3); Fed.R.Civ.P. 72.

## II. ANALYSIS

Plaintiff did not make any objections to that portion of the R&R concerning the motion to dismiss filed by West Nashville Wrecker & Towing Service. The Court agrees with the Magistrate Judge that the motion to dismiss should be granted. As the Magistrate Judge explains, Plaintiff failed to show that the towing service acted under color of state law in order to assert constitutional claims against that Defendant under 42 U.S.C. § 1983. The R&R will be adopted with regard to the recommendation on this motion to dismiss.

Plaintiff did not make any objections to that portion of the R&R concerning the motion for summary judgment filed by Defendants Wright and Spray, both of whom are park police officers employed by Metropolitan Government of Nashville. The Court agrees with the Magistrate Judge

3

that these Defendants' motion for summary judgment should be granted on Plaintiff's claims against them under the First, Fifth, Eighth, and Fourteenth Amendments, and on Plaintiff's claims against them for conspiracy under 42 U.S.C. § 1985(3). The R&R will be adopted with regard to the recommendations on these claims.

Having conducted the *de novo* review of the file required by the objections of Defendant Spray, the Court concludes that Plaintiff's remaining Fourth Amendment illegal arrest claim against Officer Spray and Officer Wright should not proceed to jury trial as the R&R suggests. Plaintiff alleged that Officers Wright and Spray lacked probable cause when they arrested him for driving with a suspended license shortly after midnight on April 9, 2005. Officer Spray moved for summary judgment on this claim, arguing that he was not the officer who actually arrested the Plaintiff, he provided only backup assistance to Officer Wright, and therefore, Plaintiff cannot hold him liable for false arrest under the Fourth Amendment, citing Radvansky v. City of Olmsted Falls, 395 F.3d 291, 311 (6th Cir. 2005). Officer Spray also raised a qualified immunity defense. (Docket Entry No. 267, Memorandum of Law at 10-11.) Officer Wright represented that his motion was in the nature of a motion for partial summary judgment because he was "not moving for summary judgment on the false arrest claim against him." (Id. at 10 n.6.)

The R&R does not accept Officer Spray's contention that he could not be held liable under the Fourth Amendment, distinguishing this case from Radvansky. But after considering whether Officers Wright and Spray are entitled to qualified immunity, the R&R determined that "plaintiff has established at least a genuine issue for trial on whether his Fourth Amendment rights were violated by defendants Wright and Spray." (R&R at 14.) The R&R also states: "Defendant Wright

4

apparently concedes that there is a genuine issue of material fact on whether he had probable cause to arrest plaintiff[.]" (R&R at 11.)

The Magistrate Judge reached these ultimate conclusions even though Plaintiff provided no evidence in opposition to the summary judgment motion to support his claim that he was arrested without probable cause. Cf. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (once the moving party shows an absence of evidence to support the nonmoving party's case, the nonmoving party has the burden to provide specific facts demonstrating there remains a genuine issue of material fact for trial). A genuine issue of material fact for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court is not obligated to grant this *in forma pauperis* Plaintiff a jury trial on a cause of action that fails to state a legal claim against Defendant Wright or Defendant Spray. See 28 U.S.C. § 1915(e)(2)(ii) ("the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted[.]"). Nor is the Court permitted to grant Plaintiff a jury trial if the officers are entitled to qualified immunity on the Fourth Amendment illegal arrest claim. Plaintiff apparently did not conduct any discovery in this case. Defendants filed a copy of Plaintiff's deposition in support of the motion for summary judgment. Even taking as true Plaintiff's version of the facts given under oath at his deposition, Plaintiff fails to state a Fourth Amendment claim for illegal arrest against Officers Wright and Spray. Alternatively, the officers are entitled to qualified immunity.

5

It is black letter law that the Fourth Amendment requires probable cause for an arrest. See Lyons v. City of Xenia, 417 F.3d 565, 573 (6th Cir. 2005). The legal inquiry turns on whether the facts and circumstances within the arresting officers' knowledge were "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). "Courts look at this question through the lens 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Lyons, 417 F.3d at 573 (quoted case omitted). Around midnight on April 8-9, 2005, Officer Wright spotted Plaintiff's burgundy 1988 Ford Crown Victoria Country Squire station wagon parked on the side of the road behind the Parthenon Towers, an apartment complex in Nashville, Tennessee, which is managed by the Metropolitan Development and Housing Agency ("MDHA"). (Docket Entry No. 263, Wright Aff. ¶ 3.) Officer Wright recalled that he had received information around 6:30 p.m. on April 8 regarding a male subject in a vehicle of similar description showing pornography to children on a playground near Centennial Park.[1] (Id. ¶ 4.) Officer Wright had seen Plaintiff's car in the Centennial Park/Parthenon Towers area previously, and he recalled that Plaintiff's vehicle matched the description of the car the police were looking for on April 8. (Id.)

Considering both Plaintiff's deposition testimony and Officer Wright's declaration, it is undisputed that Officer Wright approached Plaintiff's car and observed Plaintiff sitting in the

---

[1]Plaintiff acknowledged that in early April 2005 he spent time in Centennial Park, which is near Parthenon Towers. He stated he received medical treatment at nearby Centennial Hospital and he stayed with friends at Parthenon Towers or slept in his car to avoid the long drive to his place of residence in Ashland City, Tennessee. (Docket Entry No. 262, Ex. 1, Green Depo. at 26-29. (The deposition transcript filed electronically bears two sets of page numbers. The Court uses the page numbers located in the bottom right corner of the pages.))

6

driver's seat with keys around his neck. The ignition switch was broken such that the vehicle could be started without a key. Officer Wright asked Plaintiff whether he had pornography in his vehicle and Plaintiff responded that he did not. Officer Wright asked Plaintiff for consent to search the vehicle, but Plaintiff refused.

Officer Wright conducted a records check which revealed that Plaintiff's driver's license was suspended. Believing that Plaintiff was in violation of Tenn. Code Ann. § 55-50-504 (driving with a suspended license), Officer Wright arrested Plaintiff and charged him with a violation of that statute. (Wright Decl. ¶ 6.) Although Officer Wright avers that he called for backup and Officer Spray arrived to assist with the arrest, (id. ¶ 7; Docket Entry No. 264, Spray Aff. ¶ 4), the Court takes as true Plaintiff's testimony that both officers initially approached his car together, shined their flashlights into the car, and roused him from sleep.[2] Officer Spray completed the towing report and remained with the vehicle while Officer Wright transported Plaintiff to jail. (Wright Aff. ¶ 7; Spray

---

[2]Because the Court must take the facts in the light most favorable to Plaintiff on a motion for summary judgment and Defendants provided Plaintiff's sworn deposition testimony for consideration, the Court cannot rely solely on Officer Spray's statements in his declaration that he did not personally effectuate Plaintiff's arrest and he appeared on the scene only after the arrest was made when Officer Wright summoned him to provide backup assistance. Plaintiff testified that both officers approached his vehicle at the same time and both were involved in the arrest. The Court must take Plaintiff's version as true in ruling on the motion for summary judgment.

For this reason, the Court overrules Officer Spray's objections to the R&R. He reiterates that he was not involved in the arrest and thus cannot be held liable under the Fourth Amendment. But the factual support for these statements consists solely of his own declaration and the declaration of Officer Wright. Plaintiff's testimony appears to raise a dispute of fact on the point. But even assuming, without deciding, that Officer Spray was involved in the arrest as Plaintiff alleges, Officer Spray is nonetheless entitled to summary judgment under the Court's analysis.

Aff. ¶ 5.) An inventory search of the car turned up a "Penthouse Magazine."[3] (Wright Aff. ¶ 8; Docket Entry No. 265-1, Vehicle Towing Report).

The pertinent state statute provides:

**§ 55-50-504. Driving while privilege cancelled, suspended or revoked; forfeiture of vehicle.**

(a)(1) A person who drives a motor vehicle within the entire width between the boundary lines of every way publicly maintained which is open to the use of the public for purposes of vehicular travel, or the premises of any shopping center, manufactured housing complex or apartment house complex or any other premises frequented by the public at large at a time when the person's privilege to do so is cancelled, suspended, or revoked commits a Class B misdemeanor.

A second or subsequent violation is a Class A misdemeanor. Tenn. Code Ann. § 55-50-504(a)(2).

Plaintiff appears to contend that the officers lacked authority under state law to arrest him for a misdemeanor offense because he was not actually driving the vehicle at the time the officers approached his car. Whether the state statute requires a driver to be actually driving in an area covered by the statute before a police officer can charge the driver with a violation of § 55-50-504 is a matter for the Tennessee courts to decide, and this is an issue Plaintiff could have raised in the merits phase of his state prosecution on the charge had it not been ultimately dismissed. Cf. State v. McKinney, No. 03C01-9709-CR-00392, 1998 WL 608221 at *3 (Tenn. Crim. App. Sept. 14, 1998) (unpublished) ("To convict a defendant of driving with a revoked license, the state must prove that the person drove a motor vehicle on a public highway at a time his privilege to drive was revoked.") For Fourth Amendment purposes, the police officers were required only to determine

---

[3]Plaintiff's dismissed claims against other defendants relate to an incident on April 4, 2005, when Plaintiff was detained and questioned by law enforcement officers about allegedly trying to lure a young girl who lived at the Parthenon Towers to his vehicle. Plaintiff vehemently denies that he did any such thing. (Green Depo. at 33-46.)

8

whether, under all of the facts and circumstances known to them at the time, probable cause existed to believe that Plaintiff had committed, was committing, or was about to commit a violation of § 55-50-504. DeFillippo, 443 U.S. at 37; Lyons, 417 F.3d at 573.

Plaintiff may be arguing also that the officers violated the Fourth Amendment in that they did not have authority under state law to arrest him for a misdemeanor and instead they should have given him a citation. In Virginia v. Moore, — U.S. —, 170 L.Ed.2d 559, 564, 569-570 (2008), the Supreme Court held that a police officer does not violate the Fourth Amendment by making an arrest based on probable cause even if that arrest is prohibited by state law. Id. In that case, police officers heard on police radio that a person known as "Chubs" was driving with a suspended license and one of the officers knew David Moore by that nickname. Id. at 564. The police officers determined that Moore's driver's license was suspended, stopped the car, and arrested him for the misdemeanor of driving on a suspended license. Id. The officers searched the car incident to arrest and found crack cocaine and cash. Id. Under state law, the officers should have issued Moore a summons because, except in certain circumstances not applicable to the case, driving on a suspended license was not an arrestable offense. Id. at 565. Moore was prosecuted on drug charges and through a motion to suppress evidence argued that his initial arrest violated the Fourth Amendment. Id.

Reviewing its prior jurisprudence, the Supreme Court stated that it was "aware of no historical indication that those who ratified the Fourth Amendment understood it as a redundant guarantee of whatever limits on search and seizure legislatures might have enacted." Id. at 565-566 (footnote omitted). The Supreme Court opined that in "a long line of cases, we have said that when an officer has probable cause to believe a person has committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally

9

reasonable." Id. at 567. The Court added, "[o]ur decisions counsel against changing this calculus when a State chooses to protect privacy beyond the level that the Fourth Amendment requires. We have treated additional protections exclusively as matters of state law." Id.

In this case, when Officer Wright approached the parked 1988 Ford, Plaintiff was the only person inside the car and he was sitting in the driver's seat. Plaintiff had keys around his neck, but he could have started the car without the keys because the ignition was broken. Having personally observed this vehicle driving in the area previously and knowing that law enforcement was looking for such a vehicle, Officer Wright could reasonably deduce that Plaintiff drove the car to the place where he parked it and that Plaintiff likely would also drive the car away from the same place. Although Plaintiff could not recall at his deposition if he had driven the car "that day," even he conceded that the "car had to get there some kind of way."[4] (Green Depo. at 21.)

Officer Wright's subsequent records check on Plaintiff's driver's license revealed that the license was suspended. "Driving without a valid license is a continuing offense–in contrast, say, to a speeding or parking violation–and there are no facts in the record suggesting" that Officer Wright should have assumed that Plaintiff's ongoing offense had ceased prior to the encounter on April 9, 2005. United States v. Sandridge, 385 F.3d 1032, 1036 (6th Cir. 2004) (holding police officer had reasonable basis to suspect individual still lacked valid license on date of stop even when records

---

[4]Plaintiff admitted under oath that he did not possess a valid driver's license on April 9, 2005 or on any other day for that matter. (Green Depo. at 19.) Plaintiff said he had *never* obtained a valid driver's license because he failed the driver's test twice and thereafter he did not try to pass the test again. (Id. at 20.) Plaintiff also admitted that he had owned the 1988 Ford for about six years and he drove without a driver's license on a regular basis, contending he has no choice but to do so. (Id. at 19.) Plaintiff stated his "actual police record is rife with them charges, driving on suspended license." (Id. at 20.)

10

check was conducted earlier). Due to the suspended driver's license, Officer Wright could reasonably determine that Plaintiff was not authorized to drive a motor vehicle on the public streets, on the premises of apartment complexes, or on any other premises frequented by the public at large under Tenn. Code Ann. § 55-50-504. Under all of the facts and circumstances known to Officer Wright at the time, he had probable cause to believe that Green had committed or was about to commit a violation of § 55-50-504, and this is sufficient to satisfy the Fourth Amendment. Moore, 170 L.Ed.2d at 569-571; DeFillippo, 443 U.S. at 37; Sandridge, 385 F.3d at 1036. Even assuming without deciding that Officer Spray was also involved in the arrest as Plaintiff alleged, the same probable cause analysis applies to Officer Spray.

"'In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.'" Fridley v. Horrighs, 291 F.3d 867, 872 (6th Cir. 2002)(quoting Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir. 1995)). Plaintiff did not come forward with any evidence to create a jury question in opposition to the motion for summary judgment, as he was required to do. Even viewing the available evidence produced by Defendants in the light most favorable to Plaintiff, the Court concludes as a matter of law that the evidence is susceptible of only one reasonable determination--the officers had probable cause to arrest Plaintiff for driving with a suspended license. Thus, Officer Spray is entitled to summary judgment on this claim, and Plaintiff fails to state a legal claim against Officer Wright pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

But even if the evidence cannot be viewed as pointing to only one reasonable determination, under § 1983 an arresting agent is entitled to qualified immunity if he could reasonably, even if erroneously, have believed that the arrest was lawful in light of clearly established law and the

11

information he possessed at the time. Parsons v. City of Pontiac, 533 F.3d 492, 501 (6th Cir. 2008). As outlined above, Officers Wright and Spray reasonably could have determined in light of clearly established law and the information they possessed at the time that Plaintiff had committed or was about to commit the crime of driving with a suspended license. Thus, even giving Plaintiff his version of the facts, Plaintiff has not shown that the officers' conduct violated a constitutional right. See El Bey v. Roop, 530 F.3d 407, 413 (6th Cir. 2008). "'If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.'" Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Therefore, the Court concludes alternatively that Officers Wright and Spray are entitled to qualified immunity. Officer Spray's objections based on the denial of the qualified immunity defense will be sustained.

### III. CONCLUSION

Plaintiff cannot establish a jury-triable Fourth Amendment illegal arrest claim under § 1983 against Officers Wright and Spray. Alternatively, Officers Wright and Spray are entitled to qualified immunity. Thus, Officer Spray's motion for summary judgment on the Fourth Amendment claim will be granted. Plaintiff's Fourth Amendment claim against Officer Wright will be dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). To the extent the R&R holds that the Fourth Amendment claims should proceed to trial, the R&R will be rejected. In all other respects, the R&R will be accepted. All remaining claims in this case will be dismissed with prejudice.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE